No. 34,025

Gleaner Harvester Corporation, *Appellant*, v. T. V. Anderson, *Appellee*.

(84 P. 2d 838)

Opinion filed December 10, 1938.

*A. W. Relihan* and *T. D. Relihan,* both of Smith Center, for the appellant.

*J. F. Bell, J. T. Reed* and *Miles Elson*, all of Smith Center, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This was an action for the balance claimed to be due on a note given plaintiff by defendant for the purchase of a combine and to foreclose a chattel mortgage on wheat given to secure its payment. The defense was that the purchase of the combine had been rescinded because of the failure of the machine to work properly. At the trial defendant assumed the burden of proof. Plaintiff's demurrer to defendant's evidence was overruled. Plaintiff stood on its demurrer, and judgment went for defendant. Plaintiff has appealed.

Appellant argues its demurrer to the evidence should have been sustained, for the reason (1) that it failed to establish a mutual rescission, (2) or a consideration for the rescission, (3) that it failed to establish agency on the part of anyone to represent plaintiff, or the authority of the alleged agent to bind plaintiff to an agreement to rescind, and (4) that it failed to show defendant offered to restore, or did restore, the *status quo*.

The record before us may be summarized as follows: Defendant and his sons are growers of wheat in Smith county. In March, 1937, defendant went to the Bonecutter-Diamond Chevrolet Company at Smith Center, local agents of plaintiff for the sale of its harvesting machinery, and hereinafter called "the dealers," to purchase a combine. The dealers had him execute a written order for a 12-foot Gleaner Baldwin combine, recommended as being suitable for the work defendant wanted the machine to do. The payments were to be $65 cash for freight, $750 July 10, 1937, and $725 July 10, 1938. The warranty and agreement constituting part of the written order contained the following:

"The purchaser agrees to give each machine a fair trial. . . . If it then fails to work properly and prompt notice is given by registered letter to the company at Independence, Mo., with return receipt requested, the seller will send a man within a reasonable time to put it in order, the purchaser agreeing to render friendly assistance. If it still fails to work properly and the purchaser promptly returns it to the seller at the place where delivered, the seller will refund the amount paid, which shall constitute a settlement in full. Retention of possession or continued use shall constitute an acceptance and satisfaction of warranty and further assistance rendered the purchaser shall not be considered a waiver of this provision."

The machine was delivered at defendant's request to his son's farm on a Saturday, about June 20, and set up. Defendant paid the $65 freight and executed his note for $1,475, payable in two payments, and secured the same by a chattel mortgage on the machine and a separate chattel mortgage on his wheat. Defendant started to use it the next Wednesday. The engine heated, developed insufficient power to operate the machine, and they had to stop many times the first afternoon. The next day it worked no better; the engine jerked; U-bolts broke. Defendant went to the dealers, told them the trouble he was having, and got new U-bolts and put them in. Still the machine did not work; the engine was not functioning well; U-bolts continued to break and be replaced; there was trouble with the chain carrier and other working parts of the machine. These troubles were reported to the dealers, and defendant had Benny Durrett, of Lebanon, who transacted some of his business, send a registered letter to the seller, advising it of the troubles. Experts were sent and worked on the machine, trying to discover and repair the defects, but were unable to do so. Defendant went to the dealers and said he would return the machine, but was asked not to do so, and was told another expert would be sent, and defendant

permitted that to be done. He was sent, and worked on the machine, but was unable to get it to work properly. At some time, not clearly shown by the record, defendant sent his check for $750 for the 1937 payment, but because, with the aid of the experts, the machine could not be made to work properly he stopped payment on the check, and so advised the dealers. After working with the machine about a month plaintiff installed a new engine in the machine. After that it worked better, but never functioned properly. Finally plaintiff sent a Mr. Brown to defendant to see what settlement could be made. He offered on the seller's behalf to accept a payment for that year of $200; said all of it would be used in putting in new parts and rebuilding the machine, but that no warranty of proper performance would be given. Defendant declined to accept the proposition; the machine had given too much trouble; he wanted to turn it back. Brown then said he would come and get it, and did so the next day.

It developed that after taking the machine back, and without notice to defendant, plaintiff sold the machine under its chattel mortgage covering the machine. This suit was upon the note for $1,475, less the credit of the proceeds of the resale of the machine, and to foreclose the chattel mortgage on the wheat.

Appellant argues what evidence is necessary to establish mutual rescission, or a mutual agreement to rescind, the necessity of a consideration for such an agreement, and that the party seeking to rescind put the other *in statu quo,* under the general rules pertaining to those questions, citing pertinent sections from Corpus Juris and cases dealing with those questions. We find it unnecessary to analyze these arguments and authorities carefully, although this might lead to the same result, for here the parties had an agreement in writing, made between them as a part of the contract for the purchase and sale of the machine, by which plaintiff agreed to take the machine back if after a fair trial and an opportunity for its experts to work on the machine it still failed to work properly. Hence, it is not necessary to have a new agreement for rescission, or any new consideration for such an agreement.

By this written agreement between the parties defendant was to give the machine a fair trial. The evidence discloses that he did so, and there is no contention to the contrary. If it failed to work properly—and there is an abundance of evidence it so failed—defendant was to notify plaintiff. He personally notified the dealers

and had notice sent plaintiff. In such a case plaintiff was then to send a man to put the machine in order. It did send a man; in fact, two or more were sent, to put the machine in order, but they were unable to do so. By their agreement defendant could then return the machine, and plaintiff should have refunded the amount paid, which in this case means that it should have turned back the notes and released the chattel mortgages defendant had executed, and their agreement provides that this "shall constitute a settlement in full." So, here was a complete agreement to rescind under conditions which the evidence discloses arose.

There is some argument on behalf of appellant that defendant did not return the machine promptly after it was discovered that it failed to work properly. Naturally, the word "promptly" as used here means with reasonable promptness under the circumstances. Here the evidence shows that defendant offered to return the machine and was asked by plaintiff, or by the dealers in its behalf, not to do so then, but to let plaintiff send other men to put the machine in order, and that request was granted. Hence, such delay as there was in returning the machine was brought about by plaintiff, and it cannot now be heard to complain.

Appellant argues that the extent of Brown's agency to represent the plaintiff, or that he had authority to enter into a binding agreement of rescission, was not shown by the evidence. It had been alleged in the answer that Brown was the general agent of plaintiff. The reply contained no specific denial of this allegation, but did contain a general denial, and was verified on belief by plaintiff's attorney. We pass the question whether that put the allegation of agency contained in the answer in issue. The evidence clearly shows that Brown represented appellant in some capacity, that he did take the machine, and that plaintiff accepted or acquiesced in what he did in taking the machine. It is true that the contract of employment between Brown and the plaintiff was not shown so as to establish definitely the extent of his authority to act for plaintiff. But Brown needed no authority to make an agreement of rescission; that agreement had already been made by the plaintiff in writing when the machine was sold, if the conditions as stated arose.

Now, much more might be written. The authorities cited by counsel could be analyzed and applied, or distinguished, but we regard it as being unnecessary to do so. It seems clear to us that the judgment of the trial court should be affirmed. It is so ordered.